# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01227-SCT

*CLARKSDALE MUNICIPAL SCHOOL DISTRICT,
CLAY COUNTY SCHOOL DISTRICT, GREENE
COUNTY SCHOOL DISTRICT, GREENVILLE
PUBLIC SCHOOL DISTRICT, HATTIESBURG
PUBLIC SCHOOL DISTRICT, HUMPHREYS
COUNTY SCHOOL DISTRICT, JACKSON PUBLIC
SCHOOL DISTRICT, LEAKE COUNTY SCHOOL
DISTRICT, LELAND SCHOOL DISTRICT,
NORTH BOLIVAR CONSOLIDATED SCHOOL
DISTRICT, OKOLONA MUNICIPAL SEPARATE
SCHOOL DISTRICT, PRENTISS COUNTY
SCHOOL DISTRICT, RICHTON SCHOOL
DISTRICT, SIMPSON COUNTY SCHOOL
DISTRICT, SMITH COUNTY SCHOOL DISTRICT,
SUNFLOWER COUNTY CONSOLIDATED
SCHOOL DISTRICT, TATE COUNTY SCHOOL
DISTRICT, WAYNE COUNTY SCHOOL
DISTRICT, WEST TALLAHATCHIE SCHOOL
DISTRICT, WEST BOLIVAR CONSOLIDATED
DISTRICT AND WILKINSON COUNTY SCHOOL
DISTRICT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/14/2015 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| TRIAL COURT ATTORNEYS: | D. RONALD MUSGROVE |
| | MICHAEL SHELTON SMITH, II |
| | BLAKE DAMON SMITH |
| | JEFFREY MATTHEW GRAVES |
| | DORIAN E. TURNER |
| | HAROLD EDWARD PIZZETTA, III |
| | JUSTIN L. MATHENY |
| | JESSE MITCHELL, III |

COURT FROM WHICH APPEALED:    HINDS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANTS:     D. RONALD MUSGROVE
                              MICHAEL SHELTON SMITH, II
                              MICHAEL V. RATLIFF
                              DORIAN E. TURNER
                              CASEY LANGSTON LOTT
                              DUSTIN COLT CHILDERS
                              JOE-COLBY RAY LANGSTON
                              JESSE MITCHELL, III
                              JEFFREY MATTHEW GRAVES
                              BLAKE DAMON SMITH
ATTORNEYS FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY:  JUSTIN L. MATHENY
                                   HAROLD EDWARD PIZZETTA, III
NATURE OF THE CASE:            CIVIL - OTHER
DISPOSITION:                   AFFIRMED - 10/19/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.    The appellants in this case are twenty-one public school districts. They claim the Legislature's appropriations for public education during fiscal years 2010-2015 were statutorily inadequate. According to them, Mississippi Code Section 37-151-6 mandated the Legislature fully fund the Mississippi Adequate Education Program (MAEP), but the Legislature failed to follow this mandate. They sought judicial enforcement of this statute in Hinds County Chancery Court, requesting more than $235 million in State funds—the difference between what they received and what they claim they should have received had the Legislature fully funded MAEP.

¶2. The chancellor found the school districts were not entitled to relief because he determined that Section 37-151-6 is not a binding mandate. The chancellor therefore dismissed the school districts' claim. Because we find that Section 37-151-6 is not mandatory, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. Mississippi Code Section 37-151-6 provides that "[e]ffective with fiscal year 2007, the Legislature shall fully fund the Mississippi Adequate Education Program." Miss. Code Ann. § 37-151-6 (Rev. 2014). The Mississippi Adequate Education Program is the statutory scheme that the Legislature uses to distribute funding to public schools.[1]

¶4. During fiscal years 2010-2015, the Legislature did not fully fund the MAEP in its annual appropriations. Consequently, on August 24, 2014, fourteen public school districts filed suit against the State of Mississippi in the Chancery Court of Hinds County, First District. The complaint was later amended to add seven more school districts, for a total of twenty-one plaintiffs, plus "XYZ School Districts 1-17" (collectively, "the Districts"). The Districts' complaint alleged that the State failed to fully fund MAEP for the fiscal years 2010-2015 as required by Section 37-151-6. It alleged that the Districts had been injured by this failure because it deprived the Districts of the resources necessary to educate the children of Mississippi.

---

[1]"The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe." Miss. Const. art. 8, § 201.

3

¶5.     The Districts requested declaratory, monetary, and injunctive relief.   First, the Districts requested a declaratory judgment that the State is obligated to fully fund the public schools according to the MAEP.   Second, the Districts asked the court to enter a money judgment in their favor "[i]n accordance with the State's legal duty and obligation to fund Plaintiffs for fiscal years 2010, 2011, 2012, 2013, 2014, and 2015[.]" Each district requested a money judgment in a specific amount, for a total request of $235,979,247.49.[2]   Third, the Districts sought a permanent injunction enjoining the State from further violating the MAEP.

¶6.     The State answered, asserting that the amended complaint failed to state a claim upon which relief could be granted and should therefore be dismissed.   *See* M.R.C.P. 12(b)(6). The State subsequently filed a motion for judgment on the pleadings.   *See* M.R.C.P. 12(c). In this motion, the State asserted the Districts' amended complaint failed on its face for four reasons: (1)   Section 37-151-6   "did not, and does not, require future Legislatures to appropriate and allocate the school districts any specific amount of state funds for any future fiscal years[;]" (2)   the   "2006   Legislature   could   not   override the discretionary appropriations decision of future Legislatures[;]" (3) the Districts' "requested multi-million dollar money damages award is barred by sovereign immunity[;]" and (4) the relief sought "is barred by the Mississippi Constitution[,] which mandates a separation of powers between Mississippi's three branches of government."

¶7.     While the State's Rule 12(c) motion was pending, the Districts filed a Rule 56(a) motion for summary judgment on December 19, 2014.   *See* M.R.C.P. 56(a).   The Districts

---

[2]The complaint also asked for an additional unspecified amount for any school districts that may later join the suit.

4

argued that no material facts were in dispute, because during the fiscal years 2010-2015, the State did not fully fund MAEP. And the Districts maintained that, as a matter of law, the State was required to fully fund MAEP, based on the "shall" language in Section 37-151-6.

¶8. On January 14, 2015, the chancellor heard both the State's motion for judgment on the pleadings and the Districts' motion for summary judgment. On July 15, 2015, the chancellor entered an order granting the State's motion for judgment on the pleadings and denying the Districts' motion for summary judgment.

¶9. In interpreting Section 37-151-6, the chancellor found "the entirety of the Mississippi Accountability and Adequate Education Program Act of 1997 must be considered to determine the legislative intent thereof." And "[w]hile § 37-151-6 provides the general provision that the MAEP shall be fully funded beginning fiscal year 2007, § 37-15-7 describes the specific annual allocation of funds for MAEP, **including an alternative for years in which MAEP is not fully funded**." (Emphasis in original.) Thus, the chancellor concluded the Districts' interpretation of Section 37-15-6 as "a mandatory annual duty upon the Legislature to automatically vote to appropriate and allocate to each Mississippi public school district 100% of the funds calculated under MAEP's budget estimation formula for every fiscal year after 2009" was too "limited," because it "fail[ed] to take into consideration the later provision of [Section] 37-151-7(1)(f) providing for alternative procedures to 'fully funding' the MAEP." Instead, the chancellor found he "must interpret the statutes in total as instructing the Legislature to fund the MAEP as fully as possible and providing an alternative when full funding is not had."

5

¶10.    The Districts appeal the final judgment dismissing their complaint.[3] The Districts have raised four issues on appeal: 1) whether the chancellor erred by failing to convert the State's Motion for Judgment on the Pleadings to one for summary judgment; 2) whether the chancellor erred by failing to find that Section 37-151-1, *et seq.*, is the general law mandate of Mississippi Constitution, Article 8, Section 201, and not an alternative form of funding; 3) whether the chancellor erred by not first making a determination that Section 37-151-6 was unambiguous and, in turn, giving the statute its plain meaning and, alternatively, whether the chancellor erred in his ultimate interpretation of Section 37-151-6; and 4) whether the chancellor erred by denying the School Districts' Motion for Summary Judgment.

## ANALYSIS

### 1. Standard of Review

¶11.    The Districts appeal both the grant of the State's motion for judgment on the pleadings and the denial of the Districts' motion for summary judgment. Both require de novo review. *Booneville Collision Repair, Inc. v. City of Booneville*, 152 So. 3d 265, 269 (Miss. 2014) (motion to dismiss); *Copiah Cty. v. Oliver*, 51 So. 3d 205, 207 (Miss. 2011) (motion for summary judgment). In reviewing a motion to dismiss, this Court "take[s] the allegations in the plaintiff's complaint as true, and the motion should be denied 'unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.'" *Booneville Collision Repair*, 142 So. 3d at 269 (quoting *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1275 (Miss. 2006)). For a motion for summary judgment, this Court "examines

---

[3] Four amici curiae filed briefs in this appeal—the Mississippi Center for Justice, the Governor, the Speaker of the House, and the State Auditor.

all the evidentiary matters before it—admissions in pleadings, answers to interrogatories, depositions, affidavits, etc."—"in the light most favorable to the [nonmoving] party[.]" ***Stewart ex rel. Womack v. City of Jackson***, 804 So. 2d 1041, 1046 (Miss. 2002). If the moving party is then entitled to judgment as a matter of law, summary judgment should be entered in the moving party's favor. ***Id.***

¶12. The only relevant factual allegation in this case is uncontested: During the fiscal years 2010-2015, the Legislature did not fully fund MAEP. Thus, the primary issue before this Court is whether the Legislature's failure to fully fund MAEP entitles the Districts to relief.

### *2. Motion to Dismiss on the Pleadings versus Motion for Summary Judgment*

¶13. The Districts argue that the chancellor committed a reversible procedural error. According to the Districts, because the State attached exhibits to its motion for judgment on the pleadings, the chancellor should have converted the motion to one for summary judgment. Because he did not, the Districts argue that the judgment must be reversed.

¶14. This argument fails because the chancellor did not rely on matters outside the pleadings. Under Rule 12(c):

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56[.]

M.R.C.P. 12(c). While the State did attach exhibits to its motion, those exhibits did not present "matters outside the pleadings." Rather, the exhibits consisted merely of copies of

the law.[4]  Thus, it was not necessary for the chancery court to convert the motion to a motion for summary judgment.

¶15.    Furthermore, in disposing of the Districts' complaint, the chancellor actually did follow the requirements of Rule 56.  *See* M.R.C.P. 56(c).  The purpose of requiring a Rule 12(c) motion to be converted to a Rule 56 motion is to give the other side at least ten days' notice that the court is going to consider matters outside the pleadings and an opportunity to present evidence in response.  *See **Palmer v. Biloxi Reg'l Med. Ctr.***, 649 So. 2d 179, 182-83 (Miss. 1994) ("It is important that the court give the parties notice of the changed status of the motion and a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").   Here, the Districts clearly had both.

¶16.    In fact, it was the Districts that asked the chancellor to consider matters outside the pleadings by filing their motion for summary judgment more than ten days before the January 14, 2015, hearing.  The Districts attached multiple exhibits to their motion and presented these exhibits at the hearing.  The Districts cannot now complain that they lacked the required ten days' notice and the opportunity to present all materials relevant to defend the State's motion.  *See **id.***

**3. Statutory Interpretation**

*a. Whether Section 37-151-6 is the "general law mandate" of Section 201.*

¶17.    The Districts contend that Section 37-151-6 is the "general law mandate" to carry out Section 201 of the Mississippi Constitution, and that it thus prevails over appropriations bills.

---

[4]The State presumably attached the laws at issue for the chancellor's convenience.

They argue that the chancellor's interpretation created an unnecessary conflict between Section 37-151-6, Section 37-151-7, and Section 201 of the Mississippi Constitution. We need not address the argument that the chancery court improperly elevated Section 37-151-7 over Section 37-151-6, because our analysis of Section 37-151-6 does not rely on Section 37-151-7. To the extent the Districts argue or imply that the Legislature cannot fulfill its Section 201 mandate without fully funding MAEP, because that is the only statutory scheme the Legislature has provided to fulfill Section 201's mandate, that argument is without merit.

¶18. Section 201 provides that "[t]he Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe." Miss. Const. art. 8, § 201. The Constitution does not require a specific dollar amount, nor does it mandate a specific formula be used. While the Constitution does require that the Legislature pass general laws to provide for the establishment, maintenance, and support of free public schools, it also gives the Legislature significant discretion in shaping such laws, permitting the Legislature to prescribe the "limitations and conditions" of support. Miss. Const. art. 8, § 201.

¶19. For fully funding MAEP to be an enforceable constitutional right, such duty would have to arise from the language of the Constitution itself, which it does not, or be the *only* way for the Legislature to satisfy its constitutional obligation. But MAEP is not the *only* general law the Legislature could pass to fulfill its duty under Section 201. In other words, the Districts have not argued the Legislature *cannot*, as a constitutional matter, provide an alternative to fully funding MAEP. Instead, the Districts simply argue the Legislature *did*

9

*not* provide a statutory alternative procedure to fully funding MAEP in the fiscal years 2010 and beyond. Thus, any rights the Districts seek to enforce are purely statutory, and to the extent they argue this is a constitutional matter, that argument is without merit.

*b. Whether Section 37-151-6 is mandatory.*

¶20. "The function of the Court is not to decide what a statute should provide, but to determine what it does provide." **Lawson v. Honeywell Int'l, Inc.**, 75 So. 3d 1024, 1027 (Miss. 2011). "The Court must not broaden or restrict a legislative act." **Id.** Whether a "statute is ambiguous, or not, the ultimate goal of this Court in interpreting a statute is to discern and give effect to the legislative intent." **City of Natchez, Miss. v. Sullivan**, 612 So. 2d 1087, 1089 (Miss. 1992). In determining legislative intent, this Court must first look to the language of the statute at issue. **Lawson**, 75 So. 3d at 1027.

¶21. Section 37-151-6 in its entirety provides that "[e]ffective with fiscal year 2007, the Legislature shall fully fund the Mississippi Adequate Education Program." Miss. Code Ann. § 37-151-6 (Rev. 2014). The language missing from this provision is particularly illuminating. Section 37-151-6 places no obligation or responsibility on the Governor to approve any bill fully funding MAEP.[5]

¶22. The Governor must approve and/or sign a bill for it to become law, unless the Legislature overrules his veto. Miss. Const. art. 4, § 72. The Legislature obviously knows

---

[5]We do not address the potential separation of powers issues inherent in the Legislature attempting to mandate the Governor sign a bill. We simply note that in failing to even attempt to do so, the Legislature made clear its intent that this provision is not mandatory.

of this constitutionally mandated procedure.[6]  Yet, with full knowledge of the constitutional legislative process, it failed in Section 37-151-6 to address the Governor's role.[7]  Given the constitutional steps required for a bill to become law, and the failure of Section 37-151-6 to address them, we simply cannot find that the directive in the statute is mandatory.

¶23.    Consequently, the Districts cannot show any direct entitlement to the funds they request, because they have not shown that the Governor would have signed a bill fully funding MAEP.  Thus, the Districts have shown no injury.

## CONCLUSION

¶24.    Because Section 37-151-6 does not obligate the Governor to sign a bill fully funding MAEP, the statute cannot be construed as mandatory.  Additionally, because the Governor is not obligated to sign any bill fully funding MAEP, the Districts have not shown any injury, as they cannot show that, even had the Legislature passed a bill fully funding MAEP, that bill would have become law.  For these reasons, we affirm the judgment of the chancery court granting the State's motion for judgment on the pleadings and denying the Districts' motion for summary judgment.

¶25. **AFFIRMED.**

**WALLER, C.J., KITCHENS, P.J., BEAM AND ISHEE, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, CHAMBERLIN AND ISHEE, JJ.;  RANDOLPH, P.J.,**

---

[6]Legislators all swear an oath to uphold the Mississippi Constitution, to read the Mississippi Constitution, and to execute the requirements imposed by the Mississippi Constitution on the Legislature.  Miss. Const. art. 4, § 40.

[7]We also note that constitutional problems may exist with one Legislature binding future Legislatures to appropriations.  *See* Miss. Const. art. 4, § 64.

11

**JOINS IN PART. COLEMAN, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, P.J., MAXWELL AND CHAMBERLIN, JJ. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶26.   The majority is correct.  The language of Section 37-151-6 did not obligate the Governor to refrain from vetoing any potential bill that fully funded MAEP.  But a simpler and more fundamental truth is that the judiciary lacks constitutional authority to hand over $235 million in State funds that the Districts concede the Legislature never appropriated.

¶27.   Our Constitution separates the powers of each branch of government.  The very first provision of Mississippi's Constitution decrees:

> The powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confined to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.

Miss. Const. art. 1, § 1.  And "[n]o person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of these others."  Miss. Const. art 1, § 2.

¶28.   The power to appropriate the State's financial resources belongs exclusively to the Legislature—not the judiciary.  Miss. Const. art. 4, § 33 (vesting the "legislative power of this state" with the Legislature).  Indeed, "the Constitution regards the Legislature as the sole repository of power to make appropriations of moneys to be paid out of the state treasury."  ***Colbert v. State***, 86 Miss. 769, 778, 39 So. 65, 67 (1905).[8]  Here, we are not faced with an

---

[8] *See also* Miss. Const. art. 4, § 64 (requiring a majority of all members of both houses of the Legislature to "make appropriations of money out of the State Treasury");

allegation that the Legislature refused to exercise this power to fulfill its constitutional duty to appropriate funds for public education.[9] *See* Miss. Const. art. 8, § 201. Instead, the complaint is that the amount of money the Legislature appropriated was *not enough*.

¶29. By requesting monetary relief in an amount to achieve full funding of MAEP for fiscal years 2010-2015, the Districts are essentially asking the judiciary to appropriate unappropriated money. But for us to do so would require we cross the constitutional divide and untie the State's purse strings. This we are constitutionally restrained from doing because the judicial branch "has no influence over . . . the purse[.]" The Federalist No. 78 (A. Hamilton). That power lies instead with the representatives of the people, who during the years in question, through wisdom or folly, opted against appropriating money necessary to fully fund MAEP.

¶30. We have long held "[t]here cannot be a right without a remedy." *Smith v. Williams-Brooke Co.*, 111 Miss. 393, 401, 71 So. 648, 650 (1916). And here, the judiciary

---

*Hood ex rel. State Tobacco Litig.*, 958 So. 2d 790, 813 (Miss. 2007) ("Before money can come out of the state treasury, such money must be appropriated by the Legislature."); *State v. Cole*, 81 Miss. 174, 193, 32 So. 314, 315 (1902) ("No money can come into the treasury or go out of it lawfully except as directed by legislative act. Collection and disbursement of public money belong to the legislature, and must be done as it directs."); *cf. also Walker v. U.S. Dep't of Housing & Urban Dev.*, 912 F.2d 819, 830 (5th Cir. 1990) ("Courts of equity are no exception to the rule that disbursements from the United States Treasury first must be authorized by a congressional appropriation.").

[9] Nor does this case involve what recourse we would have should the Legislature abuse its power of the purse and completely defund a coequal branch of government. *See Hosford v. State*, 525 So. 2d 789, 797 (Miss. 1988).

can provide no remedy to the Districts without overstepping our constitutional bounds.[10]

Therefore, I specially concur.

**COLEMAN, CHAMBERLIN AND ISHEE, JJ., JOIN THIS OPINION. RANDOLPH, P.J., JOINS THIS OPINION IN PART.**

**COLEMAN, JUSTICE, CONCURRING IN RESULT ONLY:**

¶31.   While I agree with the result reached by the majority, I cannot agree fully with its reasoning.  The majority contends that, because Mississippi Code Section 37-151-6 does not speak to the governor's prerogative to sign, veto, or ignore a bill passed by the Legislature, the Legislature does not intend for it to mandate Legislative action notwithstanding the choice of the word "shall."  The majority's argument holds some attraction, especially as that which "shall" be done pursuant to the statute is the full funding of the Mississippi Adequate Education Program and, as – as the majority points out – the Legislature cannot turn bills intended to do so into law by itself.  However, the issue in today's case does not include the actions of the Governor but the Legislature alone, and the logic of the majority does not, in my view, address the also-pertinent question of whether the Legislature must pass laws to fully fund the Program and send them to the Governor, however the Governor may then treat them.  After all, by its terms, Section 37-151-6 applies only to the Legislature.  Perhaps the Legislature intended to require itself to act and leave the Governor's decision to the Governor.

---

[10] I note the situation would be different if the Legislature had appropriated money to the Mississippi Department of Education, which in turn failed to distribute it to the Districts as directed.  If such was the case, we would be empowered to order the money distributed according to the Legislature's appropriation. *See* ***Miller v. State***, 130 Miss. 564, 94 So. 706 (1923).

¶32. However, the Legislature certainly has the authority to amend existing statutes. *See Barbour v. Hood*, 974 So. 2d 232, 241 (¶ 18) (Miss. 2008); *Miss. Ethics Comm'n. v. Grisham*, 957 So. 2d 997, 1003 (¶ 14) (Miss. 2007). Whether the language of the general law is mandatory or not, when the Legislature passes a one-year appropriations law that differs from the general law it does nothing more than temporarily amend or suspend the general law. *See Burgos v. State*, 222 N.J. 175, 207, 118 A.2d 270, 289 (2015). Although at least one state court has held that appropriations subserve general laws and cannot conflict with and amend them, *see, e.g., Flanders v. Morris*, 88 Wash. 2d 183, 190, 558 P.2d 769, 774 (1977), because of the legislative power to appropriate money discussed by Justice Maxwell in his opinion, which I join, the reasoning of the *Burgos* Court is more persuasive. Indeed, the *Burgos* Court grounded its holding in a similar treatment of the separation of powers within the New Jersey government and the New Jersey Legislature's power of the purse.

¶33. For the foregoing reasons, I would hold that in the instant case the Legislature acted within its constitutional authority to amend Section 37-151-6 with the underlying appropriations bills.

**RANDOLPH, P.J., MAXWELL AND CHAMBERLIN, JJ., JOIN THIS OPINION IN PART.**